IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.              CRIMINAL ACTION NO. 1:23-cr-00097

TERRY LEON BLANKENSHIP, and,
LAUREL BLANKENSHIP,

    Defendants.

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendant Terry Leon Blankenship's ("Terry Blankenship") Motion for Judgment of Acquittal, or, in the Alternative, for a New Trial, (ECF No. 122). Also before the Court is Defendant Laurel Blankenship's ("Laurel Blankenship") Motion for Judgment of Acquittal, or, Alternatively, Motion for New Trial, (ECF No. 123). For the reasons provided herein, the Court **DENIES** the motions.

       *I.*  *BACKGROUND*

On June 6, 2023, a grand jury in Charleston, West Virginia, charged Terry Blankenship with violating 18 U.S.C. § 1591 (sex trafficking of children or by force, fraud, or coercion) and 18 U.S.C. § 2260A (committing a felony offense involving a minor while being a registered sex offender). (ECF No. 1.) These charges were based on allegations made by a minor victim ("Minor Victim 1") that Terry Blankenship provided Minor Victim 1 with vapes and phone minutes in exchange for sexual favors. (ECF No. 131 at 5:01-06; 22:02-07.) On October 4, 2022, Minor Victim 1 recanted her initial allegation to a CPS worker. (ECF No. 131 at 38:06–08; 16:02–07.)

1

This recantation led to Terry Blankenship's charges being dismissed on October 4, 2023, following a second forensic interview. (ECF No. 43; ECF No. 131 at 30:17-20.)

During the sex trafficking investigation, law enforcement officers reviewed jail audio and video calls between Terry and Laurel Blankenship. (ECF No. 131 at 7:11-16.) These calls revealed attempts by Terry and Laurel Blankenship to improperly influence Minor Victim 1's testimony. (*Id.* at 30-31.) These jail calls led to a three-count Second-Superseding Indictment ("the Indictment") on October 17, 2023. (ECF No. 45.) The new indictment charged both defendants with witness tampering and conspiracy to corruptly persuade Minor Victim 1 from testifying in the aforementioned sex trafficking case. (*Id.*) Trial commenced in this case on January 17, 2024. (ECF Nos. 111, 112.) During trial, the Government sought to establish that following Minor Victim 1's recantation of her initial allegation against Terry Blankenship, which led to the sex trafficking charge being brought against him, Terry and Laurel Blankenship (collectively, "Defendants") attempted to improperly influence Minor Victim 1 to stick to her recantation. (*See generally* ECF No. 131.)

The jury returned a verdict on January 18, 2024, (ECF No. 119), finding Terry Blankenship guilty of the following charges:

> Count One: Attempt to obstruct, and in any way, interfere with and prevent the enforcement of 18 U.S.C. § 1591, in violation of 18 U.S.C. § 1591(d);
>
> Count Two: Knowingly attempt to corruptly persuade another person with the intent to influence and prevent the testimony of Minor Victim 1 in an official proceeding, in violation of 18 U.S.C. § 1512(b)(1); and
>
> Count Three: Knowingly conspire to commit offenses against the United States by attempting to corruptly persuade another person with the intent to influence and prevent the testimony of Minor Victim 1 in an official proceeding, in violation of 18 U.S.C. § 1512(k).

The Court adjudged Terry Blankenship guilty on Counts One, Two, and Three of the Indictment. (ECF No. 115.)  Similarly, the jury's verdict found Laurel Blankenship guilty of the following charge:

> Count Three: Knowingly conspire to commit offenses against the United States by attempting to corruptly persuade another person with the intent to influence and prevent the testimony of Minor Victim 1 in an official proceeding, in violation of 18 U.S.C. § 1512(k).

The Court adjudged Laurel Blankenship guilty on Count Three.  (ECF No. 116.)

Defendants each filed their respective motions on January 31, 2024.  (ECF Nos. 122, 123.) The Government responded, (ECF No. 124), and Defendants never replied.  Therefore, the motions are fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

### A. Rule 29 – Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 directs a court, upon a defendant's motion after the close of evidence and before submission to the jury, to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a). Nevertheless, "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later," regardless of whether the defendant previously moved for a judgment of acquittal before the case was submitted to the jury. Fed. R. Crim. P. 29(c)(1), (3).  The court must determine whether "the jury's verdict is supported by 'substantial evidence,' that is, 'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'"  *United States v. McLean*, 715 F.3d 129, 137 (4th Cir. 2013) (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)); *see also United States v. Hickman*,

626 F.3d 756, 763 (4th Cir. 2010) (citing *United States v. Young*, 609 F.3d 348, 355 (4th Cir. 2010)).

To determine whether a defendant meets the "heavy burden" provided under the rule, the question becomes whether "any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." *Hickman*, 626 F.3d at 763 (quoting *United States v. Bynum*, 604 F.3d 161, 166 (4th Cir. 2010) (internal quotation marks omitted), *cert. denied*, 560 U.S. 977). The court must "view[ ] the evidence in the light most favorable to the government," keeping in mind that "the jury . . . weighs the credibility of the evidence and resolves any conflicts in the evidence presented." *McLean*, 715 F.3d at 137 (quoting *Burgos*, 94 F.3d at 862). If multiple interpretations can be reasonably deduced from the evidence, "the jury decides which interpretation to believe." *See id.* (citing *Burgos*, 94 F.3d at 862). Reversal of a conviction is traditionally required when, regardless of proper jury instructions, "no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979) (citations omitted).

B.  Rule 33 – Motion for New Trial

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). *See also United States v. Souder*, 436 Fed.Appx. 280, 289 (4th Cir. 2011) (citing *United States v. Campbell*, 977 F.2d 854, 860 (4th Cir. 1992)). "When the motion attacks the weight of the evidence, the court's authority is much broader than when it is deciding a motion to acquit on the ground of insufficient evidence." *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). Unlike a Rule 29 motion for judgment of acquittal, a Rule 33 motion does not require the court to view the evidence in the light most favorable to the government, and the court "may evaluate the credibility of the witnesses." *See id.*; *Campbell*, 977 F.2d at 860. Ultimately, a new trial is required "[w]hen the evidence weighs

so heavily against the verdict that it would be unjust to enter judgment." *Arrington*, 757 F.2d at 1485 (citing *Tibbs v. Florida*, 457 U.S. 31, 38 n.11, 44 n.20 (1982)) (other citations omitted). The discretion to grant a new trial is broad in nature, *see United States v. Prescott*, 221 F.3d 686, 688 (4th Cir. 2000), but it should be exercised sparingly. *See, e.g., United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (citation omitted). The Fourth Circuit has provided that "if the evidence is legally sufficient to affirm a criminal conviction, a trial court abuses its discretion when, without further explanation, it grants 'a new trial based on its finding that the evidence was insufficient to support the verdict.'" *Souder*, 436 Fed.Appx. at 289 (quoting *United States v. Wood*, 340 Fed.Appx. 910, 911 (4th Cir. 2009)).

### III.     DISCUSSION

A. *Defendants' Motions for Judgment of Acquittal*

Terry Blankenship's Motion for Acquittal argues that the Government failed to meet its burden of proof to establish his guilt as to the charges in Counts One, Two and Three. (ECF No. 122.) Similarly, Laurel Blankenship's Motion moves for acquittal on Count Three. (ECF No. 123.) Like Terry Blankenship, she broadly asserts that there was insufficient evidence for a rational juror to find her guilty.

   1. <u>Terry Blankenship's Motion for Judgment of Acquittal as to Counts One, Two, and Three</u>

Terry Blankenship argues that the Government "fail[ed] to meet its burden of proof" in regard to proving the three counts of which he was found guilty. (ECF No. 122.) While Terry Blankenship does not provide any reasoning to support this bald assertion,[1] the Government

---

[1] Included in Terry Blankenship's motion is a statement that he "incorporates by reference his memorandum in support of the motion, to be filed subsequent hereto." (ECF No. 122.) However, no subsequent memorandum was ever filed.

5

responds that the evidence of Terry Blankenship's guilt introduced at trial was "substantial." (ECF No. 124 at 3.) The Court agrees with the Government.

Count One of the Indictment charged Terry Blankenship with violating 18 U.S.C. § 1591(d). (ECF No. 45 at 1.) To find Terry Blankenship guilty of that charge, the Government had to prove the following two elements.[2]

FIRST:   That the defendant attempted to obstruct or, in any way, interfered with or prevented the enforcement of 18 U.S.C. § 1591(a); and

SECOND:   That the defendant acted knowingly.

(ECF No. 118 at 9.) The words "interfere" and "prevent" have their plain and ordinary meaning. The defendant may be found guilty of this offense if the Government proves beyond a reasonable doubt that the defendant "attempted to obstruct" the enforcement of Title 18 U.S.C. § 1591(a), that the defendant interfered with the enforcement of § 1591(a), or that the defendant prevented the enforcement of § 1591(a). (*Id.*) The Government is not required to prove that a violation of § 1591(a) has occurred. (*Id.* at 10.) The "enforcement" of § 1591(a) includes an investigation or prosecution of § 1591(a). (*Id.* at 10.) It is not relevant whether any person has or will be convicted of a violation of § 1591(a). (*Id.* at 10.) An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. (*Id.* at 13.)

To find the defendant guilty of an attempt, the Government must prove each of the following beyond a reasonable doubt: first, that the defendant intended to commit the crime alleged; second, that the defendant undertook a direct act in a course of conduct planned to culminate in the commission of the crime; third, that the act was substantial, in that it was strongly corroborative of the defendant's criminal purpose; and, fourth, that the act fell short of the

---

[2] The Court is restating the elements as they were told to the jury. (ECF No. 118.) Neither Terry nor Laurel Blankenship objected to the jury instructions at trial, and the Court does not find issue with them now.

commission of the intended crime due to intervening circumstances. (*Id.* at 10.) A substantial step is more than mere preparation yet may be less than the last act necessary before the actual commission of the substantive crime. (*Id.* at 10.) Conduct that constitutes a substantial step toward the commission of a crime is determined by the surrounding factual circumstances. (*Id.* at 11.) In determining whether the defendant has taken a substantial step, the focus is on the actions already taken to complete the underlying crime, not on the acts that remain uncompleted. (*Id.*) A verbal agreement, without more, is insufficient to prove attempt. (*Id.*) However, "a specific discussion could be so final in nature that it left little doubt that a crime was intended and would be committed." *United States v. Pratt*, 351 F.3d 131, 136 (4th Cir. 2003). For example, in *United States v. Engle*, the Defendant communicated with a minor victim through phone and mail while imprisoned in an attempt to procure false testimony and solicit future sexual activity. 676 F.3d 405, 421-23 (4th Cir. 2012). The Fourth Circuit upheld Engle's conviction, finding that these communications, taken as a whole, were "more than sufficient" to constitute a substantial step for the crime of attempted enticement of a minor. *Id.* at 423.

The Court begins with the first element of Count One, that Terry Blankenship attempted to obstruct or, in any way, interfered with or prevented the enforcement of 18 U.S.C. § 1591(a). The Government presented more than enough evidence for "any rational trier of fact[]" to have found Terry Blankenship guilty. *Hickman*, 626 F.3d at 763 (quoting *Bynum*, 604 F.3d at 166).

Viewing the evidence in the light most favorable to the Government, the testimony of Lieutenant Steven Sommers ("Sommers") established that Terry Blankenship had been charged with violating 18 U.S.C. § 1591(a), the federal statute prohibiting sex trafficking of a minor— Minor Victim 1. (ECF No. 131 at 6–7.) While that case was pending, Defendants engaged in

7

numerous recorded jail video and phone calls. (*See generally* ECF No. 121-1.) During these calls, they discussed the testimony, and more specifically the recantation, of Minor Victim 1. (*Id.*)

On April 4, 2023, Defendants had the following conversation:

| | |
|---|---|
| Laurel Blankenship: | I really am hoping that, um, what we've been told about her… |
| Terry Blankenship: | Is true. |
| Laurel Blankenship: | …changed. Yeah. |
| Terry Blankenship: | That's how you need to talk to her you know, hold off on making arrangements. If nothing else, do it for me. |
| Laurel Blankenship: | Yeah, I will. |
| Terry Blankenship: | That might, that might change the whole ball game. |

(ECF No. 121-1-G-1-1B at 0:00:01–0:00:26.)

On July 20, 2023, Defendants had another call together. (ECF No. 131 at 17.) For context, on August 22, 2022, Minor Victim 1 alleged to law enforcement that Terry Blankenship had engaged in sexual activity with her. (ECF No. 121-G-4.) On August 25, 2022, Minor Victim 1 underwent a forensic interview and restated the allegation made on August 22, 2022. (*Id.*) On October 4, 2022, Minor Victim 1 recanted her initial allegation to a CPS worker. (ECF No. 131 at 38:06–08; 16:02–07.) Sommers eventually learned of this recantation, but as of April 4, 2023, Sommers was not aware of any recantation made to a forensic interviewer. (ECF No. 131 at 16:24–17:01.) Between April and July, there was a pretrial hearing in Terry Blankenship's sex trafficking case. (ECF No. 131 at 17.) As a result of that hearing, a guardian ad litem was ordered for Minor Victim 1, as well as a second forensic interview. (*Id.*) At that time, Terry Blankenship had a pending trial date for the sex trafficking case, and Minor Victim 1 had been served with a subpoena to testify at that trial. (*Id.* at 18.) When Sommers served Minor Victim 1 with the subpoena, there

8

was no indication made to Sommers that there was a recantation. (*Id.* at 18.) The following was discussed on the second July 20, 2023, recorded phone call between Defendants:

Terry Blankenship: As long as she sticks with her recantation, I should be, this should be over in a month or so.

Laurel Blankenship: Yep.

Terry Blankenship: Wish I had somebody to do a little homework for me, but I don't [*laugh*].

Laurel Blankenship: What kind of homework?

Terry Blankenship: Stuff. We'll talk more about that when I'm on the video call with you.

Laurel Blankenship: I was going to say I can cover it. I have covered a lot of stuff here already that I don't tell you about because I can't, or it could get me in trouble. If you get my drift.

(ECF No. 121-G-1-1C at 0:00:01–0:00:56.) The conversation about "homework" was continued later in the day over video call between Terry and Laurel Blankenship. (ECF No. 131 at 18–19.) In the recorded video call, the following conversation ensued:

Terry Blankenship: Now, back to the concept of homework. [*Wink* *Wink* *Wink*]

Laurel Blankenship: Yeah.

Terry Blankenship: You know what I mean, right?

Laurel Blankenship: Yeah.

Terry Blankenship: I hope you do cause I can't spell it out, and if I try to get you to say anything, you likely will say it out. Can't trust you. You would not make a spy.

Laurel Blankenship: Well, you know, like I said, your idea of homework is probably some homework I've already done.

Terry Blankenship: There's some homework you need to—probably should do, soon, concerning today.

9

| | |
|---|---|
| Laurel Blankenship: | Like I told you, some homework I've already done. [*Eyes widening*] |
| Terry Blankenship: | Out the road? |
| Laurel Blankenship: | Yeah. |
| Terry Blankenship: | Huh. |
| Laurel Blankenship: | Yeah. [*Both laugh*] Step ahead of you. |

(ECF No. 121-G-1-1D at 0:00:01–0:01:00.) In regard to the "out the road" reference, Sommers testified that Minor Victim 1 was living with her grandmother, Janet Presley, who lives on the same road as Laurel Blankenship. (ECF No. 131 at 19); (*see also id.* at 12 (noting that Defendants interchangeably use the name "Granny" with "Janet Presley").)

In another video call that took place again on July 20, 2023, Terry Blankenship tells Laurel Blankenship, "As long as [Minor Victim 1] uhh [*multiple consecutive winks*] . . . as long as she sticks with her recantation we should be done with this bull crap." (ECF No. 121-G-1-1E at 0:00:20–0:00:33.) To which, Laurel Blankenship replied, "I've already done my homework on that." (*Id.* at 0:00:33–0:00:35.) The two spoke again on July 20, 2023. (ECF No. 121-G-1-1F.) During that later conversation, Defendants had a video call with one another where Laurel Blankenship said, "I haven't talked to [Minor Victim 1] at all since this whole thing happened." (*Id.* at 0:00:22–0:00:25.) Terry Blankenship then replied with, "And you shouldn't either [*multiple consecutive winks followed by laughter*]." (*Id.* at 0:00:26–0:00:33.)

The next day, the two spoke again over video call. (ECF No. 121-G-1-1G.) On this recorded call, the following conversation took place:

| | |
|---|---|
| Terry Blankenship: | Hopefully she admits [*multiple consecutive winks*] that everything she said in that video is a lie [*wink* *wink*]. |
| Laurel Blankenship: | Yeah, I'm hoping she does too. |

10

> Terry Blankenship: That all that shit, the vapes and shit like that, she admits where she really got that shit from [*wink* *wink*] school. I'd say she got the alcohol from Ashley's house cause she admitted Ashley likes Fireball. . . . I mean everything else she talked about [*multiple consecutive winks*] getting from school. . . . As long as she just admits to the truth of everything [*wink*] . . . we'll be alright.

(*Id.* at 0:00:18–0:01:54.) In the recording of the video call, as referenced above, Terry Blankenship mentions a "video." (*Id.* at 0:00:18–0:00:24.) At trial, Sommers testified that in the investigation, there was a video of the initial forensic interview with Minor Victim 1. (ECF No. 131 at 21–22.) A rational juror could reasonably conclude that this initial forensic interview would have been pre-recantation. Sommers also testified that in relation to the sex trafficking charges, according to Minor Victim 1, Terry Blankenship gave her vapes and phone minutes in exchange for sex. (*Id.* at 5:01-06; 22:02-07.)

Finally, in the last recording of a video call between Defendants, Terry Blankenship points to his eye and says, "See this? What's this?" (ECF No. 121-G-1-1I at 0:00:01–0:00:09.) To which Laurel Blankenship replied, "Your finger touching your eyeball." (*Id.* at 0:00:10–0:00:12.) To make his message clearer, Terry Blankenship points to his eye again, and then, makes the hand gesture of a phone up to his ear as he asks Laurel, "Did you get that?" (*Id.* at 0:00:13–0:00:19.) Terry Blankenship continued to point to his eye and then make the hand gesture of a phone. (*Id.* at 0:00:21–0:00:34.) After Laurel Blankenship confirmed that she got Terry Blankenship's code, (*Id.*), the following conversation took place:

> Terry Blankenship: Maybe that would be an absolute guarantee to keep things on track.
>
> Laurel Blankenship: [*shakes head*] Nuh-uh.
>
> Terry Blankenship: Whatever. I guess my freedom's not worth it. It'd be worth it to me to make that offer.
>
> Laurel Blankenship: I said I'm not . . . nuh-uh because . . . listen to me . . . . She has family members who would do anything to cause a problem.

11

> Terry Blankenship: And? And they wouldn't know about it, anything. . . . If they was gonna try and cause problems, they would've done did it. . . . I was just thinking if that was an offer secretly put out there to Granny.
>
> Laurel Blankenship: She doesn't – one, Granny doesn't want her to have. Two, she doesn't need it. Not necessary. . . .  There's been a lot that's happened since you've been there that I can't talk about here, but you'll find out when you're home . . . .  And you'll understand a little bit more about what I just said.

(*Id.* at 0:00:43–0:03:55.)  Sommers testified that with Terry Blankenship's hand gestures of eye and then phone, it appeared that he was referencing getting an iPhone. (ECF No. 131 at 23.)  He also testified that the "Granny" they discussed making a secret offer to is Janet Presley. (*Id.*)  As for all the winking that took place throughout the numerous video calls, Sommers testified that Terry Blankenship did not have a habit of regularly winking throughout conversations. (*Id.* at 20.)

Viewing the evidence in the light most favorable to the Government, a reasonable trier of fact could find Terry Blankenship violated the first element of Count One.  The combination of the strategic exaggerated winking; discussing "homework" to be done and already done "out the road," i.e., where Minor Victim 1 was residing; discussing providing gifts, including Fireball, vapes, and an iPhone; and heavily discussing the importance of Minor Victim 1 "[*multiple consecutive winks*] . . . stick[ing] with her recantation," (ECF No. 121-G-1-1E at 0:00:20–0:00:33), all suggest that Terry Blankenship was attempting to obstruct, interfere, or prevent enforcement regarding the sex trafficking offense.  Also viewing the evidence in the light most favorable to the Government, it is clear that Terry Blankenship knowingly engaged in all these acts, thereby, meeting the second and final element of Count One.

Count Two of the Indictment charges that on April 4, 2023, through at least July 25, 2023, Terry Blankenship "knowingly attempt[ed] to corruptly persuade another person with the intent to influence and prevent the testimony of Minor Victim 1 in an official proceeding, that is, a

proceeding before a judge or court of the United States[,] [i]n violation of Title 18, United States Code, Section 1512(b)(1)."  (ECF No. 45.)

In order to convict Terry Blankenship of this charge, the Government had to prove the following elements beyond a reasonable doubt:

FIRST:	That the defendant attempted to corruptly persuade another person;

SECOND:	That the defendant did so with intent to influence or prevent the testimony of any person in an official proceeding; and

THIRD:	That the defendant did so knowingly.

The elements of an "attempt" here are the same as outlined under Count One.  (ECF No. 118 at 10–11.)  As relevant for Count Two, persuasion by itself is innocuous and not inherently malign.  To be criminal, the persuasion must be corrupt.  (*Id.* at 11.)  To act "corruptly" means to act with the purpose of wrongfully impeding the administration of justice.  (*Id.*)  "Corruptly persuade" includes attempting to influence testimony through sheer persuasion with a corrupt purpose.  (*Id.*)  "Corrupt" describes the conduct motivated by a wrongful, inappropriate, or improper purpose.  (*Id.*)  "Corrupt persuasion" does not require acts, threats, emotional appeals, or persistent pleading, but does require the government to prove the defendant's action was done voluntarily and intentionally to bring about false or misleading testimony with the hope or expectation of some benefit to the defendant.  (*Id.*)

To prove that the defendant intended to influence testimony, the Government need only show that the defendant was aware that the natural and probable consequences of his actions would be to influence the testimony of a witness.  Whether the defendant actually influenced or could have influenced any testimony is immaterial.  (*Id.* at 11–12.)  To act with "intent to influence" a witness's testimony means to try to get the witness to change or color or shade the witness's testimony in some way.  (*Id.* at 12.)

13

Lastly, "official proceeding" means a proceeding before a judge or court of the United States, or a federal grand jury. The proceeding need not be pending or about to be instituted at the time of the offense. Additionally, there must be a nexus between the "persuasion" and a particular proceeding. That is, to find the defendant guilty, a jury must find that he knew, had notice of, or could contemplate a particular official proceeding in which the testimony might be material, and that he intended or knew that his actions were likely to affect the official proceeding. Knowingly corrupt persuasion cannot exist when the defendant does not have in contemplation any particular official proceeding in which the witness' testimony might be material. (*Id.*)

The above testimony by Sommers also leads to the conclusion that a reasonable juror could convict Terry Blankenship on Count Two. Beginning with the second element of Count Two, the official proceeding at issue was Terry Blankenship's trial for the sex offense charge against Minor Victim 1. A rational juror, viewing the evidence in the light most favorable to the Government, could reasonably find that Terry Blankenship acted with the intent "to influence or prevent the testimony" of Minor Victim 1 in the sex offense trial. First, Terry Blankenship stated things such as, "As long as [Minor Victim 1] just admits to the truth of everything [*wink*] . . . we'll be alright," (ECF No. . 121-G-1-1G at 0:00:30–0:01:54), and, "As long as [Minor Victim 1] sticks with her recantation . . . this should be over in a month or so . . . . Wish I had somebody to do a little homework for me." (ECF No. 121-G-1-1C at 0:00:01–0:00:56). Second, amongst other things, a rational juror could find that Terry Blankenship implicitly suggested that Minor Victim 1 be gifted an iPhone in exchange for false testimony. (ECF No. 121-G-1-1I at 0:00:01–0:03:55; ECF No. 131 at 22–23.) Indeed, a rational juror could believe that the iPhone would be provided in an effort by Defendants to prevent and/or influence the truthful testimony of Minor Victim 1. Additionally, a rational juror could conclude that Terry Blankenship knew that what he wanted

14

Minor Victim 1 to say was not the truth due to the numerous winks, laughs, and other exaggerated gestures he made throughout the recorded video calls.

The same is also true for the first element of Count Two. The Government presented evidence of Terry Blankenship suggesting Minor Victim 1 be gifted an iPhone as "an absolute guarantee to keep things on track." (ECF No. 121-G-1-1I at 0:00:43–0:03:55.) Considering all of the evidence presented, a rational juror could find that Terry Blankenship was acting with the purpose to corruptly persuade Minor Victim 1. Again, that purpose was to offer an iPhone in exchange for false testimony, which would undoubtedly have been to Terry Blankenship's benefit. Because acting "corruptly" means to act with the purpose to impede the administration of justice, exchanging an iPhone for false testimony directly fits the element. Therefore, such action by Terry Blankenship most certainly meets the definition of "corrupt persuasion." Lastly, all of the above evidence also suggests to a rational juror that Terry Blankenship was acting "knowingly."

Finally, Count Three of the Indictment charges that on April 4, 2023, through at least July 25, 2023, Defendants, "together . . . did knowingly conspire to . . . attempt to corruptly persuade another person with the intent to influence and prevent the testimony of Minor Victim 1 in an official proceeding . . .[i]n violation of Title 18, United States Code, Section 1512(k)." (ECF No. 45.)

In order to convict a defendant of this charge, the Government must prove the following elements beyond a reasonable doubt:

FIRST: That two or more persons agreed to do something which federal law prohibits, that is, to attempt to corruptly persuade another person with the intent to influence or prevent the testimony of any person in an official proceeding;

SECOND: That the defendant knew of this agreement or conspiracy; and

>   THIRD:       That the defendant knowingly and voluntarily participated in or became a part of this agreement or conspiracy.

A "criminal conspiracy" is an agreement, or a mutual understanding knowingly entered into by at least two people to violate the law by some common plan. (ECF No. 118 at 13.) An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason, and an act is done "voluntarily" if it is done intentionally without threat or coercion. (*Id.*)  As explained in Count Two, it is clear that a reasonable juror could find that Terry Blankenship intended to corruptly persuade Minor Victim 1. It is also clear that a reasonable juror could find from the recorded calls that Defendants were working together to accomplish this, as they both discussed various actions they could take to ensure Minor Victim 1 sticks with her recantation. For instance, Laurel Blankenship told Terry Blankenship that she had already done some "homework" for him and connected that "homework" to where Minor Victim 1 was living. (ECF No. 121-G-1-1D at 0:00:01–0:01:00.) Additionally, when discussing gifting Minor Victim 1 an iPhone, Laurel Blankenship turned down the idea not because she was against it, but because she believed it was unnecessary. (ECF No. 121-G-1-1I at 0:00:43–0:03:55.) Defendants working together, even without an explicit agreement to do so, is enough for a rational juror to find a conspiracy for Count Three.

Since a rational juror could have found Terry Blankenship guilty on all three counts, the Court denies Terry Blankenship's motion. (ECF No. 122.)

   2. Laurel Blankenship's Motion for Judgment of Acquittal as to Count three

Like Terry Blankenship, Laurel Blankenship also moves for a judgement of acquittal as to Count Three. For the same reasons a rational juror could find Terry Blankenship guilty beyond a reasonable doubt as to Count Three, so can a rational juror find Laurel Blankenship guilty. This is especially true considering that Laurel Blankenship told Terry Blankenship in April that she

16

would talk to Minor Victim 1, and then in July told Terry Blankenship that she had already done "homework." (ECF No. 121-1-G-1-1B at 0:00:01–0:00:26; 121-G-1-1D at 0:00:01–0:01:00.) In regard to "homework," she said, "I have covered a lot of stuff here already that I don't tell you because I can't, or it could get me in trouble. If you get my drift." (ECF No. 121-G-1-1C at 0:00:01–0:00:56.) Laurel Blankenship argues that all of the gestures in the recorded video calls and "ambiguous phrases," such as "homework," are not enough to establish proof beyond a reasonable doubt. However, given the totality of the evidence, and viewing that evidence in the light most favorable to the Government, any rational juror could readily piece together what Laurel Blankenship meant by "homework," and why Defendants spoke with one another about gifting Minor Victim 1 an iPhone. Indeed, Laurel Blankenship even admitted that speaking about the "homework" she has done could get her "in trouble." (*Id.*) Since a rational juror could find Laurel Blankenship guilty of Count Three, the Court denies her motion. (ECF No. 123.)

B. *Defendants' Motions for New Trial*

Moreover, analyzing the trial evidence as a whole and drawing reasonable inferences from it, the Court finds that the "evidence is legally sufficient to affirm" Defendants' convictions. *Souder*, 436 Fed.Appx. at 289 (quoting *Wood*, 340 Fed.Appx. at 911). While Defendants assert that a new trial is warranted "due to insufficiency of evidence and other errors,"[3] (ECF No. 122), and because "the interests of justice so require," (ECF No. 123), Defendants offer no support for these positions, let alone new support. The Court has already rejected these arguments when analyzing Defendants' motions for judgment of acquittal as to Counts One, Two, and Three. *See United States v. Wilder*, GJH-17-528, 2019 WL 224246, at *3 (D. Md. Jan. 15, 2019). Indeed, even judging the credibility of Sommers, and not viewing the evidence in the light most favorable

---

[3] Those "other errors" are never specified since Terry Blankenship never filed the memorandum referred to in his motion. (ECF No. 123.)

to the Government, the evidence still "weighs so heavily" in favor of a verdict. *Arrington*, 757 F.2d at 1485 (citing *Tibbs*, 457 U.S. at 38 n.11, 44 n.20). Therefore, given that Defendants have made no new arguments as it pertains to their motions for a new trial, and since substantial evidence weighs heavily in support of the jury's verdict, the Court denies Defendants' Motions for New Trial. (ECF Nos. 122, 123.)

## IV. CONCLUSION

For the foregoing reasons, Terry Blankenship's Motion for Judgment of Acquittal, or, in the Alternative, for a New Trial, (ECF No. 122), is **DENIED**. Similarly, Laurel Blankenship's Motion for Judgment of Acquittal, or, Alternatively, Motion for New Trial, (ECF No. 123), is **DENIED**.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendants and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: February 11, 2025

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE